## ISAAC GATES *versus* SAMUEL NEAL *et al.*

In an action against the selectmen of a town for refusing to receive the pla ntiff's vote, it appeared that at the election in question, a selectman, stationed in front of a table, upon which a box was placed for the reception of the votes, took the votes as they were presented, in his hand, and when the names of the voters were found on the check list, deposited the votes in the box ; that when the plaintiff came to vote, the selectman offered to take the vote in his hand, as he had previously done in every instance, but the plaintiff demanded the box which was on the table, in order that he might deposit his vote therein himself ; that the selectman declined complying with such demand, but reached towards him another box, which had been used on former occasions for the reception of votes ; and that the plaintiff re-fused to deposit his vote therein. It was *held,* that the box so presented to the plaintiff, was the ballot box, within the meaning of Revised Stat. *c.* 4, § 4, which provides, that no vote shall be received " unless deposited in the ballot box by the voter in person "; and, consequently, that in the absence of any malicious design to deprive the plaintiff of his rights, this was not an unlawful refusal to receive his vote.

THIS was *case* against the defendants, as selectmen of Lynn, for not permitting the plaintiff to vote at a town meeting held for the choice of county commissioners in 1838.

At the trial it appeared, that the meeting in question was held in the town-hall of Lynn ; that at the upper end of this hall was an enclosed space, within which the selectmen stood to receive the ballots ; that in the back part of this enclosure was a table upon which was placed a large box, with a small aperture in the cover ; that there were other smaller boxes without covers, in the enclosure ; that the usual practice had been for the voter to deliver his vote into the hands of one of the selectmen, who was stationed in front of the table, and who thereupon called the name of the voter, holding the vote till his name was found on the check list, and then deposited the vote in the large box on the table ; that the vote was usually held as delivered by the voter, so as to be seen but not so as to be read ; and that this mode of voting was adopted several years ago, in consequence of frauds being practised by voters by depositing more than one vote, and had been followed ever since.

It further appeared, that at the meeting in question, the plaintiff offered to vote, holding up his hand closed tight ; that the selectman who was receiving the votes, offered to take the

Gates<br>*v.*<br>Neal.

plaintiff's vote in his hand as he had done the other votes, but the plaintiff refused to deliver it to him, and demanded the ballot box in order that he might deposit his vote himself ; that the selectman declined offering him the large box, in which all the votes which had been given on that day, were deposited, but reached one of the smaller boxes to the plaintiff to receive his vote ; that the plaintiff refused to deposit his vote therein, and did not vote at all on that occasion ; and that the small boxes had been sometimes used on former occasions for the reception of votes, but were not so used at the meeting in question.

The jury were instructed, that the plaintiff had a right to deposit his vote in the ballot box in person, and that the method adopted by the defendants was not a compliance with the terms of the statute ; that the plaintiff was entitled to recover, if the defendants refused his vote, whatever might be their motives, and whether such refusal was the result of mistake or error in judgment on their part, or was wilful and malicious ; but that if it were malicious, the jury would be authorized to give greater damages, than if it were a mere error in judgment.

The jury found a verdict for the plaintiff ; and the defendants moved for new trial, on the ground that the jury were misdirected.

If the directions were correct, judgment was to be rendered on the verdict ; otherwise a new trial was to be granted.

*Lord* and *Stickney*, for the defendants, cited Revised Stat. c. 4, § 4 ; *St.* 1839, c. 42, § 5.

*Ward* and *Gates*, for the plaintiff, cited Revised Stat. c. 4, § 6, and the note of the Commissioners ; *St.* 1839, c. 42, § 5.

*Nov. 9th*

SHAW C. J. drew up the opinion of the Court. It is perhaps peculiar to Massachusetts, that here the law provides, that if any person duly qualified to vote, whose name is upon the list of voters, and who has, in other respects, complied with the requisitions of the law, is prohibited from voting, by the selectmen or other officers, whose duty it is to superintend elections, he shall be considered as deprived of a valuable right, and may maintain an action therefor, without being required to prove that such officer acted from malice, or from any unlawful or unjustifiable motive. This was long since held,

upon the ground, that it will afford the best security to this high and important privilege, that without it, a voter might often be refused his privilege upon slight and frivolous grounds, but yet under such circumstances, as to render it difficult, if not impossible, to prove actual malice in the officers superintending the elections. Besides, if it should appear, that the plaintiff had a right to vote, but the selectmen, through mistake or error of judgment, and without malice, should refuse to receive his vote, it would be a ground for very small, perhaps only nominal damages ; and the object of the action would be accomplished, by vindicating his right. But if such vote were refused maliciously and wilfully, or from any unlawful motive, it would be a proper case for higher damages. But whatever may have been the grounds of the decision originally, the rule of law is now well established and understood.

It is manifest from this view of the law, authorizing a voter to maintain an action, without showing any wrongful intention or corrupt motive on the part of the officers presiding at elections, that it is incumbent on him to prove clearly, that he has the right to vote, at the time when his vote is tendered, and that he has been prohibited from voting by the presiding officers.

Conformably to these views we think the jury were rightly instructed, that the plaintiff was entitled to recover, if the defendants refused the plaintiff's vote, whatever might be their motive, and whether it was the result of mistake or error in judgment, or wilful and malicious.

But the principal question arises upon the other question presented by the facts detailed in the report, which is, whether the defendants, by the method of proceeding adopted by them, did fail to comply with the terms of the statute, and thereby deprive the plaintiff of his right of depositing his vote in the ballot box.

The statute then in force, directing the mode of voting, was as follows : "No vote shall be received by the presiding officer, &c. unless deposited in the ballot box, by the voter in person." Revised Stat. c. 4, § 4.

The primary object of this provision undoubtedly was, to prescribe that the voter should attend and vote personally, and

that no proxy or substitution of any sort, should dispense with this requisite. But the terms of the statute are plain and unequivocal, and the voter has a right to insist that the officers shall conform to them in their proceedings.

The mode adopted by the selectmen of Lynn, for reasons which appeared to them satisfactory was, to place a large box on the table behind them, for the reception of votes, beyond the reach of voters, to take the ballot from the voter, and, after seeing the name checked, to deposit it in this box. Whether this method was conformable to the course prescribed to them by the statute or not, it was well calculated to prevent fraud by giving more than one vote, for which it was adopted, and if acquiesced in and assented to by any individual voter, it could be no violation of his rights.

But the plaintiff did object to it, and, had the defendants persisted in refusing to permit the plaintiff to vote in any other way, than by handing his vote to the selectman, who offered to take it, they could not be justified in such refusal, and it would have been, in legal effect, depriving the plaintiff of his right of voting upon that occasion. He had the right, as claimed, of depositing his vote in person, in the ballot box. But upon his making this claim and insisting on this right, the selectmen did offer him a box, to deposit his ballot in, which was kept at the place, had, on some former occasion, been used as a ballot box, and for aught appears was a suitable and proper one. It is for the selectmen, on such an occasion, to determine what box shall be used, whether more than one, or whether one or more small boxes shall be used to receive the votes, and a larger one to serve as a place of deposit; and the box used for such purpose is, by such use, made the ballot box.

But the defendant insisted that he had the right to deposit his vote in the general ballot box, where other voters' ballots were deposited. If the claim was to deposit his vote, where other citizens had deposited theirs, and if he complains of being deprived of a right accorded to others, still he had no right to claim, that the large box should be taken from its place and presented to him, because no other voter had personally placed his vote in that box; and if that is to be deemed the ballot

box which is presented to voters, to deposit their ballots in, personally, then this large box was not the ballot box. Another box was necessarily presented to the plaintiff, because he was the first, who had so insisted on the right of depositing his ballot, personally in the box. In this respect it is like presenting the box to the first voter, who comes to the selectmen to give in his ballot. It is then necessarily an empty box ; but it is the ballot box, because provided for use as such, by the proper officers.

The conduct of the plaintiff, in holding his hand closed tight, and insisting on placing his vote in the box used as the general deposit, was such as to warrant some vigilance on the part of the selectmen, and proper precautions to prevent illegal voting.

On the whole, the Court are of opinion, that the box offered by the selectmen, was the ballot box, in which the plaintiff might have deposited his vote, and that in the absence of all proof of malicious or wilful design to deprive the plaintiff of his rights, upon the facts stated in the report, the jury should have been instructed, that if those facts were proved to their satisfaction, there was no unlawful refusal to receive the plaintiff's vote, and, therefore, that his action could not be maintained.

Had there been proof that the mode adopted by the defendants was so done, with a view to hold the plaintiff up to ridicule, or in any respect to oppress or injure him in the exercise of a lawful right, it would have been evidence of malice, and would have presented the question in a very different aspect. But such a case would present a question of fact to be decided by the jury upon all the facts and circumstances of the case.

*Verdict set aside and a new trial granted.*